### CLEVELAND CITY RAILWAY CO. v. FIRST NATIONAL BANK.

1. CONSOLIDATION OF STREET RAILWAYS UNDER SEC. 3381, REV. STAT.

A consolidation of street railway companies, under Sec. 3381, Rev. Stat., must be effected with due regard to the rights of all persons having an interest in the stock of the old companies. The provisions of this section, authorizing directors to provide " the manner of converting the capital stock of each of the constituent companies into that of the new company, with such' other details as they may deem necessary to perfect the new organization and the consolidation of the companies," were not intended to give directors of the old companies, or its registered stockholders, the power to deprive an assignee of stock not transferred on the books of the company of his equitable rights therein.

2. DUTY OF CONSOLIDATED COMPANY TOWARD PLEDGEES OF OLD STOCK.

A consolidated street railway company, under Sec. 3381, Rev. Stat., succeeds to all the franchises, rights and privileges of the' constituent companies out of which it is formed and incurs all the liabilities ot each ; such company stands in the same relation to pledgees of the stock of the constituent companies as the original companies before consolidation ; and in the delivery of the new stock of the consolidated company in exchange for the stock of the constituent companies, it is the duty of the new company to a pledgee of the old stock to withhold its delivery until the old stock is surrendered, and it cannot rightfully deliver new stock to.the pledger, or any one for him, leaving the old stock in the hands of the pledgee ; and if loss results from such wrongful delivery it must fall upon the company making such wrongful delivery.

HEARD ON ERROR.

*Squire, Sanders & Dempsey*, for plaintiff in error.
*Hoyt, Dustin & Kelley*, for defendant in error.

HALE, J.

The Cleveland City Cable Railway Company and the Woodland Avenue & West Side Railway Company, owning and operating separate lines of street railway in the city of Cleveland, in June, 1893, were consolidated and became the Cleveland City Railway Company, commonly known as " The Little Consolidated."

The statute under which this consolidation was effected is Sec. 3381, Rev. Stat., which reads :

" The directors of the several companies may enter into a joint agreement, under the corporate seal of each company, for the consolidation of the companies, and prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new company, the number of directors and other officers thereof, and their places of residence, the amount of the capital stock of the new company agreed upon, the number of shares of capital stock, the amount of each share and the manner of converting the capital stock of each of the constituent companies into that of the new company, with such other details as they may deem necessary to perfect the new organization and the consolidation of the companies."

On May 10, 1893, the stockholders of the two companies entered into an agreement which, so far as is essential to be noted here, reads:

"The undersigned stockholders of the Cleveland City Cable Railway Company hereby appoint and irrevocably designate Frank De H. Robison and John J. Shipherd as their agents and proxies to carry out this agreement and perfect said consolidation, and they are hereby authorized to attend any and all meetings of the Cleveland City Cable Railway Company called for the purpose of carrying out the terms of this agreement, and to vote all the stock standing in the names of the undersigned, in such manner as they shall find necessary to carry out and ratify all the purposes of this agreement; and each of the undersigned stockholders in said company hereby agrees to deliver to said two persons or their chairman at such time as they may designate, all of the stock held by him, to be exchanged for stock of the Consolidated Company in proportion to the respective holdings of each as each shall be entitled to receive the same."

Thereafter, on May 11, 1893, the directors of the two companies entered into a consolidation agreement, fixing the amount of the capital stock of the consolidated company at 80,000 shares; 51,750 shares to be distributed to the stockholders of the Woodland Avenue & West Side Street Railway Company, and 18,250 shares to the stockholders of the Cleveland City Cable Railway Company, leaving the remainder of the stock in the treasury of the company, which agreement upon the subject of the distribution of the stock to the stockholders of the cable company, reads:

"To the Cleveland City Cable Railway Company, party of the first part, 18,750 shares, to be disposed of by the said company, so far as necessary to liquidate its floating indebtedness, and the remainder to be distributed among the holders of the common and preferred stock of the said company in proportion to the present relative value of the preferred and common stock."

This agreement was, by the requisite number of stockholders of the two constituent companies, approved, and the consolidation became complete.

On June 16, 1893, the Cleveland City Railway Company issued to Shipherd and De H. Robinson in one certificate 18,500 shares of stock of the consolidated company. This stock was delivered to said trustees for distribution to the stockholders of the cable company entitled thereto. Some of this stock, instead of being delivered to the rightful owners, was appropiated and used by Shipherd for his own use and benefit.

At the time of the consolidation one hundred shares of the preferred stock of the cable company stood in the name of George H. Holt, and two hundred shares of the preferred stock in the name of Giles W. Tainter, both of whom were members of the firm of Tainter & Holt, doing business as brokers in the city of New York. Each was a director of the cable company and party to all of the proceedings had in the consolidation of said two companies, including the preliminary agreement above referred to.

In 1891, Tainter & Holt borrowed of the plaintiff bank $25,000 and assigned to it as collateral security for said loan said three hundred shares of the preferred stock. These certificates of stock were transferable only on the books of the company, and it was in said certificate so

expressed. From the time these certificates were assigned to the bank, it held them with power to transfer endorsed thereon; but that power was never executed, and Tainter & Holt remained the registered owners of the stock until long after the date of the consolidation. No certificate of stock in the Cleveland City Railway Company was ever delivered to Tainter & Holt or either of them, in lieu of the said three hundred shares of the preferred stock of the cable company, nor to the plaintiff bank.

The bank had no knowledge of the consolidation of said two companies, or of the proceedings to effect the same, until long after the same was perfected.

Whether as between the registered owner of this stock and the Cleveland City Railway Company, the loss, resulting from the wrongful appropriation of said stock by Shipherd, should fall upon Tainter & Holt or the railway company, need not now be considered or determined, although it properly arises on the record.

The question that must be considered and decided, arises between the bank holding this stock as collateral security for the debt of Tainter & Holt, and the railway company. Upon whom must the loss fall, as between these two?

It is claimed in behalf of the plaintiff in error that the bank had no greater or different rights than Tainter & Holt or either of them, and, as they had no right of action against this company upon said stock, it follows that their pledgee, the bank, would have none.

To this proposition we cannot consent. The cable company, prior to the consolidation, could not rightfully issue new stock to the plaintiff's assignor, leaving the old stock in the possession of the assignee, and escape responsibility to the assignee for loss resulting therefrom.

No arrangement between the cable company and the registered owner of the stock, made without the knowledge of the assignee of the stock, who held it as security for a debt due from the registered owner, could deprive the assignor of his property rights therein. The assignment and possession of the certificate of stock by the assignee protects him from any such peril; nor could the cable company, its stockholders or directors, by contract or otherwise, transfer to the consolidated company the power to deprive the assignee of his property in such certificate by an agreement with the registered owner or otherwise, unless such power is expressly given by the statute under the authority of which the consolidation was effected.

It is true that in the joint agreement which the directors of the constituent companies were authorized to make, they were authorized to provide "the manner of converting the capital stock of each of the constituent companies into that of the new company, with such other details as they may deem necessary to perfect the new organization and the consolidation of the companies."

This, however, must be done with due regard to the rights of all persons having an interest in the stock of the old company. It was not intended by this statute to give to the directors of the old company, or to its registered stockholders, the power to deprive the assignee of the stock, not transferred on the books of the company, of his equitable rights therein. This could no more be done by the consolidated company than by one of the constituent companies prior to the consolidation.

On the completion of the consolidation the old companies became extinct except for certain limited specific purposes, and the stockholders of the old companies became stockholders in the new company, and the directors of the new company sustained towards them the same relation as did the directors of the constituent companies.

The two companies formed and became merged in the new, and the new company only had an existence. It succeeded to all the franchises, rights and privileges of the constituent companies and incurred all the liabilities of each. The same franchises and powers existed, but under a new name. Its duty to its stockholders was precisely the same as that of the constituent companies to its stockholders.

The relation of the new company to pledgees of the stock of the constituent companies is the same as was that of the constituent companies before the consolidation.

While the pledgor of a certificate of stock issued by one of the constituent companies, may act in all proceedings authorized in effecting a consolidation of the two companies, the consolidated company cannot rightfully issue to him a certificate of stock in the new company in lieu of the old certificate in the hands of a pledgee, without the knowledge or consent of such pledgee, leaving the old certificate in the hands of the pledgee.

In the delivery of the new stock the new company owes the duty to the pledgee to withhold its delivery until the old stock is surrendered. It may not rightfully deliver the new stock to the pledgor or to any one for him, leaving the old stock in the hands of the pledgee; and, if loss results from such wrongful delivery, it must fall upon the company making such wrongful delivery.

There is no substantial disagreement as to the facts of the case and, applying the law to the facts, the judgment of the court of common pleas was clearly right, and there was no prejudicial error either in the admission of testimony or in the charge to the jury.

The judgment of the court of common pleas is affirmed.